## EDWIN LONG, Appellant, v. PETER T. MASON, DAVID SHAFER et al.

In Banc, February 2, 1918.

1. **NEGOTIABLE NOTE: Surety: Parol Evidence.** Before the adoption of the present Negotiable Instrument Law parol evidence was, and since its adoption is, admissible to show that an ostensible maker signed the note as surety.

2. ———: ———: **Release of Mortgage: Negotiable Instrument Law.** If the payee took a mortgage on real estate or personal property as collateral security for the payment of the note, and released such collateral without the assent of the surety, the latter was thereby released from his obligation to the payee to the extent of the value of the property released. And since the payee should not be considered "a holder in due course" within the meaning of the Negotiable Instrument Law, the liability of the surety is not controlled by that law, but the note is subject to the same defenses as if it were non-negotiable.

3. ———: ———: ———: **Equitable Subrogation.** Accommodation makers are entitled, in an action by the payee upon a negotiable promissory note, signed by them and in addition secured by the maker's deed of trust on land, to show that as between them and the maker they were sureties; and even though it be true that under the Negotiable Instrument Law they are absolutely liable to the payee and that said law applies to the case, yet, that law does not cut off their right of equitable subrogation, and they can set up as a defense that the deed of trust was released with-

out their assent and the land sold by the mortgagor, and that if its value had been credited on the note it would thereby have been extinguished; or, instead of pleading such equitable subrogation as a defense and asserting their non-liability because of such extinguishment of the note, they may pay it and maintain an independent action against the payee for the amount of their loss arising from the release of the mortgage without their consent. But the Negotiable Instrument Law does not apply to such case, because the suit is brought by the payee himself, and he is not therefore "a holder in due course" and the rights of the parties were in no wise changed by that act, but are determined by the law existent independently of it.

Appeal from Texas Circuit Court.—*Hon. L. B. Woodside*, Judge.

AFFIRMED.

*C. C. Bland* and *Holmes & Holmes* for appellant.

(1) Plaintiff was a holder for value of the note (Sec. 9998, R. S. 1909), and the defendants having signed the same as makers were primarily liable thereon (Sec. 10161, R. S. 1909), and their engagement to pay it according to its tenor was absolute (Secs. 10161 and 10030, R. S. 1909). McCarty v. Smith, 97 Pac. (Utah) 329; Vanderford v. Bank, 105 Md. 164, 10 L. R. A. 129, 66 Atl. 47; West v. Stubblefield, 17 App. Cases, (D. C.), 283; Trust Co. v. McGinty, 212 Mass. 205. (2) Parol evidence was inadmissible to show that the defendants signed the note as sureties or accommodation makers. Bank v. Douglas, 161 S. W. 608; Lane v. Hyder, 163 Mo. App. 692. (3) The note could only be discharged by one of four ways specified by Sec. 10089, R. S. 1909. Lane v. Hyder, 163 Mo. App. 692; Bank v. Douglass, 161 S. W. 608. The statute excludes every method of discharge of this character of instrument other than those specifically stated in Sec. 10089, R. S. 1909. 2 Sutherland, Statutory Construction (Lewis's 2 Ed.), p. 916, sec. 491; State v. Mills, 161 Mo. App. 179; State v. Eckhart, 232 Mo. 49, 133 S. W. 321; State v. Fisher, 119 Mo. 351; Ex parte Mansell, 237 Mo. 304;

Bradley Co. v. Higborn, 56 Wash. 628; McGinty v. Trust Co., 212 Mass. 205. (4) Though the defendants did sign the note as accommodation makers, and Long, the payee, had knowledge of that fact, yet they were primarily and absolutely liable thereon. Sec. 10000, R. S. 1909; Ranse v. Wooten, 140 N. C. 557, 111 Am. St. Rep. 875; Cellers v. Meachem, 49 Ore. 186; Vanderford v. Bank, 105 Md. 164.

*Hiett & Scott* and *Lamar, Lamar & Lamar* for respondents.

(1) The Negotiable Instruments Law, adopted in in the various States, was to codify the law as it then was, except in cases where a conflict existed. Where there was no conflict, the law made no change. Bunker on Negotiable Instruments, pp. 1 to 21; Brannan on Negotiable Instruments (2 Ed.), pp. 190, 203, 223, 3, 7; Selover on Negotiable Instruments (2 Ed.), p. 7; Ogden on Negotiable Instruments, p. 6, sec. 8; p. 253, p. 256; Brannan on Negotiable Instruments (2 Ed.), sec. 196. (2) The Law Merchant is a part of the common law, and of the law of this State. 7 Cyc. 520-522; Stagg v. Linnenfelter, 59 Mo. 336. (3) In the absence of any provision of the Negotiable Instrument Law, the Law Merchant governs. R. S. 1909, sec. 10165. Codes, which condense and reaffirm in general the rules of the common law, do not repeal the exceptions to these general rules, and no change is to be presumed unless by the most imperative implication. The rule of *expressio unius* invoked by appellant is not applied to codifying statutes. Brannan on Neg. Ins. (2 Ed.), p. 190; 10 Yale Law Journal, p. 84 (article by Prof. Brewster, member of commission that framed Neg. Ins. Law); Sutherland on Stat. Cons., sec. 156; English on Interpretation of Stat., sec. 127, 205. (4) There is a marked distinction between a holder and a holder in due course. Holder means a payee in possession; a holder in due course is defined by Sec. 10022, R. S. 1909. Long, the payee in the note, is not a holder in due course, because it was

never negotiated to him, but he is simply a holder whose rights are clearly defined by section 10028. It is apparent from this that all defenses are open to repondents that would be open if the note were non-negotiable. The Negotiable Instrument Law has no application to non-negotiable instruments, and they are not governed by the statute. Crawford on Negotiable Instruments (2 Ed.), p. 5, note A; Bunker on Negotiable Instruments, p. 23 note 1; Brannan on Negotiable Instruments (2 Ed.), p. 1, note 1; Selover on Negotiable Instruments, par. 2; Westburg v. Lbr. Co., 94 N. W. (Wis.) 574. This being true, the common law, or law merchant, would regulate the rights of the parties as to all non-negotiable instruments in this State. Under section 10028, in the hands of any other than a holder in due course, the rights of the parties are the same as though the instrument were non-negotiable; hence it unquestionably follows that as between maker and payee before a note has passed into the hands of a third party in due course, it is open to all the defenses between maker and payee that it ever was, or that a non-negotiable note is. (5) Section 10089, stating how a negotiable instrument may be discharged, refers to the instrument itself, and not to the discharge or release of a party. Section 10092 expressly provides a different method, whereby a party may be discharged. Ogden on Negotiable Instruments, p. 123, sec. 130; Bunker on Negotiable Instruments, p. 111, and note. Any defense is valid as between the immediate parties that would be valid in an ordinary contract. As between the immediate parties on a bill or note, no question arises whether the defense is absolute and is inherent in the instrument itself, or whether it is personal, raising equities between the parties. Ogden on Negotiable Instruments, sec. 142, p. 132. (6) As between the immediate parties, it is competent for defendant to show that he is an accommodation maker, and to set up any equities that may be set up under the law merchant or common law. Crawford on Negotiable Instruments, p. 35, sec. 54, note A; Crawford on Negotiable Instru-

ments, p. 58, sec. 97, note A; Ogden on Negotiable Instruments, sec. 142, p. 132; Daniels on Negotiable Instruments (6 Ed.), p. 1477, sec. 1312; Selover on Negotiable Instruments (2 Ed.), p. 325; Brannan on Negotiable Instruments (2 Ed.), p. 117, and note; Fullerton Lbr. Co. v. Snouffer, 117 N. W. (Iowa) 50; Haddock v. Haddock, 85 N. E. (N. Y.) 686; Bank v. Barbour, 149 N. W. (Wis.) 767; Bank v. Edwards, 243 Mo. 563. (7) The testimony shows that Long knew that Mason was the maker for value, and received the whole consideration. The deed of trust recites on its face that Mason is to pay this debt. Giving the note and deed of trust were contemporaneous acts, and they will be construed togther. Brownlee v. Arnold, 60 Mo. 79. (8) To allow to payee of a negotiable note, knowing the relation of the parties to the note and their liability thereon knowing that only one, of such parties is a maker for value and that the others are makers without value, to take from the only one who is a maker for value, knowing him to be such, collateral security for such note and then improperly dispose of such security or permit the principal debtor so to do, and thereby deprive the makers without value of the right to be subrogated, has always been considered so unjust and inequitable as to be condemned by the courts of every civilized land. Ferguson v. Turner, 7 Mo. 497; Lakenan v. Trust Co., 147 Mo. App. 485; Colebrook, Collateral Securities (2 Ed.), sec. 209, p. 382, and sec. 212, p. 328; 27 Eng. & Am. Ency. Law (2 Ed.), p. 516. (9) The Negotiable Instrument Law makes no provision for the payee of a note to take collateral security. Now in the event the payee does so do, by what law will we determine the duties and liabilities of such payee as to such security? Evidently not by the Negotiable Instrument Law, because it makes no provisions. Certainly by the *lex loci contractus*. Houghtaling v. Ball, 19 Mo. 84; Sallee v. Chandler, 26 Mo. 124; State ex rel. v. Cunningham, 6 Mo. App. 263; Roach v. Foundry, 21 Mo. App. 118; Thompson v. Ins. Co., 169 Mo. 12; McKinstrey v. Railroad, 153 Mo. App. 546; 7 Cyc. 637. (10) That the

payee of the note having a specific lien on the property of the principal debtor and voluntarily surrenders the lien or loses it by his own negligence the sureties will be discharged to the extent of the value of the lien so discharged or lost has been the declared law of this State ever since 1841. Ferguson v. Turner, 7 Mo. 497; Lakenan v. Trust Co., 147 Mo. App. 485. This was also the Common Law. 27 Eng. & Am. Ency. Law (2 Ed.), p. 516; Colebrooke on Collateral Securities (2 Ed.), sec. 209, p. 382; 3 Kent (13 Ed.), sec. 124, p. 195, and English cases cited in Note E. (11) Parol testimony is admissible to show who is principal and who is surety to a note. Garrett v. Ferguson, 9 Mo. 125; Bank v. Wright, 53 Mo. 153; Hardester v. Tate, 85 Mo. App. 624; Ins. Co. v. Broyles, 78 Mo. App. 364.

RAILEY, C.—The case was certified to this court by the Springfield Court of Appeals, in an opinion by Judge FARRINGTON, concurred in by ROBERTSON, P. J. Judge STURGIS dissented, in a separate opinion. The cause was certified upon the ground that the majority opinion is in conflict with Bank of Senath v. Douglass, 178 Mo. App. 664 (by St. Louis Court of Appeals), and Lane v. Hyder, 163 Mo. App. 688 (by Kansas City Court of Appeals).

The complaint alleges, that on March 25, 1910, defendants, by their joint and several promissory note, a copy of which is filed with petition, promised **Petition.** for value received to pay plaintiff or order the sum of four thousand dollars, one year after the date thereof, with interest from date, at the rate of eight per cent per annum, and if the interest be not paid annually to become as principal and bear the same rate of interest; that on May 16, 1911, defendants paid on said note $200, and on August 6, 1912, they paid thereon the sum of $595.16, which two payments were credited on said note and discharged all the interest that had accrued and was due on said note to July 24, 1912, leaving the whole of the principal of same $4000 due on said note.

It is further alleged that, to secure the payment of said note, Peter T. Mason, one of the makers thereof, executed and delivered to plaintiff his deed of trust on lands in Texas County, Missouri, and that since the commencement of this action, plaintiff, on April 4, 1914, caused said deed of trust to be foreclosed, and the same was sold to the highest bidder for $3500; that the costs of said foreclosure amounted to $55.50: that the net amount credited on said note, by virtue of said sale, on April 4, 1914, was $3444.50 leaving a balance due on said note of $1091.61, which, with interest from April 4, 1914, at the rate of eight per cent per annum, is still due plaintiff, etc.

The answer of defendants admits that they signed the note sued on in this cause. They allege that defend-

**Answer.** ant, Peter T. Mason, applied to plaintiff for a loan of $4000, executed and delivered the note sued on, and that the other defendants signed said note solely for the accommodation of said Mason; that the latter received all of the consideration from plaintiff for said note and that neither of the other defendants received any part of the consideration for said note, all of which was known to and understood by the plaintiff, Edwin Long, at the time he accepted the note; that, on the date of the execution of said note, and as other and additional security thereto, said Mason and wife executed and delivered their deed of trust, by which they conveyed to J. H. Smith, as trustee for plaintiff, about 184.39 acres of land in Texas County, described in the answer. They further allege, that the above land was of sufficient value to fully secure the payment of said note and the interest thereon; that they would not have signed or executed said note as securities or joint makers, if they had not known that said deed of trust had been given to plaintiff. They aver that on March 16, 1912, Mason and wife sold and conveyed about 57.15 acres of land aforesaid, described in the answer, to one Helton for $2000; that plaintiff released said last described land from the lien of said deed of trust, and only applied on the

above note a credit of $595.16; that the release of said land by plaintiff from the lien aforesaid was without the knowledge or consent if these defendants. The answer avers that said deed of trust inured in equity to their benefit, and became in equity security to them for any amount which they might. be required to pay on said note; that the $2000 aforesaid, with the net amount received from the sale of the remaining land in said deed of trust, was and is sufficient to pay off and fully discharge the note sued on; that the land aforesaid, sold to Helton, was worth $2000. They allege that, in equity and good conscience, by reason of the facts aforesaid, they should be released from the payment of said note. They ask that an accounting be had, and that the $2000 aforesaid, should be credited on said note, and for such relief as to the court may seem just and proper in the premises.

**Demurrer.** Plaintiff demurred to above answer, on the ground that is sets up no legal or equitable defense to the note sued on. The demurrer was over-ruled.

On June 18, 1914, plaintiff dismissed as to Peter T. Mason, for the reason that he had not been served with process.

It does not appear from the abstract of record that any *reply* was filed to the above answer, nor was the case tried by plaintiff as though a reply had been filed. On the contrary, plaintiff objected to any evidence in the case on the part of defendants for the reason that the answer sets up no legal or equitable defense to the note sued on. Various objections were made by plaintiff to all the testimony offered by defendants, and the witnesses of the latter were not cross-examined by plaintiff's counsel during the progress of the trial.

**Evidence.** The testimony introduced by defendants, without stopping here to consider the competency, etc., of same, sustained the allegations of the answer.

273 Mo.—18

The case was tried before the court without a jury, and the only declaration of law asked, was by the plaintiff, as follows:

"The court declares the law to be that under the evidence the issues should be found for the plaintiff and his damages assessed at the balance due on the note sued on." This declaration of law was refused, the plaintiff offered no evidence in rebuttal, the trial court found the issues in favor of the defendants and rendered judgment accordingly. Plaintiff filed his motion for a new trial in due time, which was overruled, the cause appealed by him to the Springfield Court of Appeals, and by the latter certified to this court as heretofore stated.

I. It is conceded by counsel for appellant, in their reply brief filed in the Springfield Court of Appeals, at pages two and three, that prior to the adoption of the present Negotiable Instrument Law, parol evidence was admissible to show that an obtensible maker signed the note as surety.

*Surety: Mortgage.*

"Also, that if the payee took a mortgage on real or personal property as collateral security for the payment of the note, and released such collateral without the assent of the surety, the latter was thereby released from his obligation to the extent of the value of the property released."

The above statement of the law, as it formerly existed, is sustained by many rulings of this court, as well as those of the Courts of Appeals, some of which are as follows: Ferguson v. Turner, 7 Mo. 497; Rice v. Morton, 19 Mo. 263; Furnold v. Bank of the State of Missouri, 44 Mo. 336; Harrison v. Phillips, 46 Mo. 520; Berthold, Admx. of Sarpy, v. Berthold, 46 Mo. 557; Allison v. Sutherlin, 50 Mo. 274; Fulkerson v. Brownlee, 69 Mo. 371; May v. Burk, 80 Mo. 675; Ferguson's Admr. v. Carson's Admr., 86 Mo. 673; Benne v. Schnecko, 100 Mo. 250; The State Bank of St. Louis v Bartle, 114 Mo. 276; George v. Somerville, 153 Mo. 7; Burrus v Cook, 215 Mo. 496; Havlin v. Continental

Nat. Bank, 253 Mo. 292; People's Bank of Ava v. Baker, 193 S. W. (Mo. App.) l. c. 632-3; Van Hoose v. Machinery Co., 169 Mo. App. l. c. 63; Petty v. Tucker, 166 Mo. App. l. c. 101; Lakenan v. Trust Co., 147 Mo. App. 48.

Keeping in mind the above principles founded upon both equity and justice, let us proceed to consider the case from appellant's view point.

II. The uncontroverted answer, as well as the oral testimony adduced at the trial, shows that all the other defendants were *accommodation makers* for the benefit of Peter T. Mason. Section 10000, Revised Statutes 1909, cited by appellant, reads as follows:

"An accommodation party is one who has signed the instrument as a maker, drawer, acceptor, or endorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

It may be conceded, for the sake of the argument, that plaintiff is the holder of the note sued on for value, as contemplated by Section 9998, Revised Statutes 1909, relied upon; that as respondents signed said note as makers, they are *primarily* liable thereon, under the provisions of Section 10161, Revised Statutes 1909, cited by counsel for appellant. Let it also be conceded, that the engagement of respondents to pay the note according to its tenor and effect was absolute, under the provisions of Sections 10030 and 10161, Revised Statutes 1909, cited and relied upon by appellant. What then is the status of the respective parties before the court? As between *plaintiff* and these respondents, the latter are *absolutely* liable as accommodation makers, but it is equally true that as between *Peter T. Mason* and these respondents, the latter occupy the position of *sureties*. While the uncontroverted allegations of the answer, and the oral testimony offered and received in

support of same, may not be competent to relieve respondents from the position of *accommodation makers* of said note, yet, such evidence was clearly admissible for the purpose of showing the relationship between Mason and the respondents, in order that the latter might assert their equities under the law of subrogation, if it could be legally done in this case.

Upon a careful consideration of our Negotiable Instrument Law (Chap. 86, R. S. 1909), we are of the opinion that it does not undertake to cut off the right of equitable subrogation under the facts presented in the answer of defendants. The latter are either entitled to assert such rights, in the present litigation, as an equitable extinguishment of plaintiff's demand, or to pay the note and to maintain an independent action against the plaintiff, under the equitable principles of subrogation, clearly recognized in the array of authorities heretofore cited.

In the recent case of Havlin v. Continental Nat. Bank, 253 Mo. 292, the plaintiff, an accommodation indorser of two promissory notes, recognizing his *absolute* liability thereon, paid the same. Certain stock was deposited as collateral security with the payee of said notes. The latter sold the stock to an innocent purchaser, and credited the amount of the sale on notes *not* indorsed by plaintiff. The maker sued the payee for an accounting, alleging that the sale of the stock was illegal, and recovered in that suit, and the amount of all the notes was credited to the payee, and a surplus was adjudged to belong to the maker, and it was held that plaintiff could recover from the payee the amount of money paid by him, as the debt was twice paid.

The defendants, however, in the case at bar, have seen fit to set up their equitable counterclaim, or cross-action of subrogation, in bar of plaintiff's right of recovery. The assertion of this right is not in conflict with any provision of the Negotiable Instrument Law, but on the contrary, proceeds upon the theory *that respondents owe plaintiff the amount due on said*

*note and have an equitable claim of subrogation against him, for the loss they have sustained by reason of the release to Helton of the 57 acres of land from said deed of trust, which should have been held for their benefit, as security for his indebtedness.*

Section 1806, Revised Statutes 1909, provides, that: "The answer of the defendant shall contain: First, . . . second, a statement of any new matter constituting a defense or counterclaim, in ordinary and concise language, without repetition."

Section 1807, Revised Statutes 1909, reads as follows:

"The counterclaim mentioned in the last section must be one existing in favor of a defendant and against a plaintiff, between whom a several judgment might be had in the action, and arising out of one of the following causes of action: First, a cause of action arising out of the contract or transaction set forth in the petition as the foundation of the plaintiff's claim, or connected with the subject of the action; second, in an action arising on contract, any other cause of action arising also on contract, and existing at the commencement of the action. The defendant may set forth by answer as many defenses and counterclaims as he may have, whether they be such as have been heretofore denominated legal or equitable, or both. They must each be separately stated, in such manner that they may be intelligibly distinguished, and refer to the cause of action which they are intended to answer."

The first clause of the last mentioned section, in express terms, provides for the enforcement of an equitable counterclaim, based upon the facts pleaded in the answer.

We are therefore of the opinion, that the facts as alleged in defendant's answer are sustained by the pleadings as well as the oral evidence offered at the trial. The conclusion reached by the Springfield Court of Appeals, in affirming the case, regardless of the reasons assigned therefor, meets with our approval.

The judgment of the trial court is accordingly affirmed. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of RAILEY, C., is adopted as the opinion of Court in Banc. *Williams, J.,* concurs in a separate opinion in which *Graves, C. J.,* and *Blair* and *Walker, JJ.,* concur; *Faris, J.,* concurs in the result; *Bond, J.,* dissents, and concurs in the views expressed by STURGIS, J., in Long v. Shafer, 185 Mo. App. l. c. 654; *Woodson, J.,* not sitting.

WILLIAMS, J. (concurring)—I concur in Paragraph One and in the result of the majority opinion, but am unable to agree with the reasons set forth in Paragraph Two thereof.

I am of the opinion that respondents' liability on the note is controlled by law other that than contained in the Negotiable Instrument Act.

Appellant, the payee, should not be considered as "a holder in due course" within the meaning of the Negotiable Instrument Act. [Sec. 10022, R. S. 1909; 3 R. C. L., par. 238, page 1032; Vander Ploeg v. Van Zuuk, 135 Iowa, 350; Long v. Shafer (this case in the Springfield Court of Appeals), 185 Mo. App. 641, l. c. 648.]

Since then the appellant, the payee, is a holder other than in due course, the note is "subject to the same defenses as if it were non-negotiable." [Sec. 10028, R. S. 1909.]

From the foregoing it follows that the right of the parties under the present situation are in no manner changed by the provisions of the Negotiable Instrument Act and that the respondents, under the authorities cited in Paragraph One of the majority opinion, are released from further liability on the note.

*Graves, C. J., Walker* and *Blair, JJ.,* concur herein.